**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

CIVIL ACTION NO.:      **2:17-cv-20 (WOB-CJS)**

**TAKIA RODRIGUEZ**                                    **PLAINTIFF**

**VS.**                    **MEMORANDUM OPINION AND ORDER**

**CRACKER BARREL**                               **DEFENDANT**
**OLD COUNTRY STORE, INC.**

## I.     INTRODUCTION

This action involves an employment discrimination and retaliation dispute concerning the termination of an employee following that employee's religious accommodation request. Takia Rodriguez ("Plaintiff") contends that she was racially and religiously discriminated against at one of Cracker Barrel Country Store, Inc.'s ("Defendant") Florence, Kentucky locations that caused her to seek additional employment and contributed to her February 2016 termination. Particularly, Plaintiff's amended complaint alleges four (4) counts under Title VII and K.R.S. § 344 including: disparate treatment on the basis of race (Count I), retaliation (Count II), discriminatory hostile work environment (Count III), and conspiracy to engage in continuing discriminatory treatment (Count IV). (Doc. 28, PageID# 119-122). Plaintiff has also brought common law tort and punitive damages claims for grossly negligent hiring and retention (Counts V, VI). (*Id.* at 122-23).

The matter is before this Court on Defendant's motion to dismiss for failure to state a claim, or alternatively, stay the proceedings and compel arbitration. (Doc. 32). The Court previously heard oral argument on this motion and took the matter under advisement. (Doc. 38). Having given this matter further study, the Court now issues the following memorandum opinion and order.

## II.     FACTUAL & PROCEDURAL BACKGROUND

### A.     Cracker Barrel Old Country Store's ADR Policies

Defendant, a Tennessee corporation licensed to transact business in Kentucky, is a national restaurant company and retail store serving home-style comfort food along with a variety of gifts and music. (Doc. 33, PageID# 189).

Defendant offers training programs and company policies for its employees through an on-line interface known as Cracker Barrel University ("CBU"). (Doc. 32-2, PageID# 155). Employees use a unique individual access number to login to a particular module, create their own password, and review a particular unit. (*Id.*) CBU maintains records of each module that every employee completes. (*Id.*)

One of CBU's modules covers Defendant's alternative dispute resolution ("ADR") policies. In this module, Defendant presents its ADR Policy Guide ("Guide") which discusses covered employment dispute claims and outlines a three-step resolution process. (Doc. 32-3). The policy specifically identifies that claims arising out of disputes involving harassment, discrimination, or retaliation must be resolved through arbitration if Defendant's in-house conciliation process fails. (*Id.* at 161). It explicitly states that claims, including but not limited to, "harassment, discrimination, retaliation . . . and termination . . . that come about through

employment laws such as Title VII of the Civil Rights Act . . . and any federal, state, or local laws, or regulations covering the same or similar matters" are covered by the conciliation and arbitration policy. (*Id.* at 160). Additionally, "ADR also covers any tort, negligence, or contractual claims." (*Id.*)

The Guide spells out in unambiguous terms the effect of compliance with its provisions. It is clear that "[i]f the dispute is not resolved through conciliation, it must be submitted to final and binding arbitration." (*Id.* at 159). The Guide goes on to note in bold typeface that "**[*t*]*his means that neither you nor the Company may file a lawsuit against the other in a court of law.***" (*Id.*) (emphasis original).

### B. Takia Rodriguez's Employment & Termination

Defendant employed Plaintiff as a server at one of its Florence, Kentucky locations beginning in November 2014. (Doc. 32-2, PageID# 159).

On June 28, 2015, Plaintiff launched the ADR Guide module. (Doc. 32-4, PageID# 167-68). After reviewing the Guide, Plaintiff arrived at a sign-off page entitled "ADR Sign-off" whose purpose was to "ensure that the Employee has read, understands, and will comply with the company's ADR policy." (*Id.*) Plaintiff's electronic signature memorialized her completion of the module. (*Id.* at 168).

On December 15, 2015, Plaintiff approached Associate Manager Tom Gillman informing him that she had recently become a born-again Christian and requested to have Sunday mornings off to attend services. (Doc. 33-2, PageID# 221). Gillman accommodated Plaintiff's request by adding Saturday shifts to her schedule. (*Id.*)

Plaintiff claims that Defendant then proceeded to reduce Plaintiff's hours gradually from forty to four hours per week. (Doc. 33-1, PageID# 217). As Defendant reduced Plaintiff's hours, Plaintiff attempted to compensate by acquiring additional shifts from co-workers. (*Id.*). When Plaintiff did work her shifts, she noticed that Defendant only gave her two poorly positioned tables in the restaurant's rear to wait on. (*Id.*)

The reduced hours compelled Plaintiff to seek separate additional employment. (Doc. 28, PageID# 118). Once Plaintiff secured this employment and Defendant became aware of Plaintiff's second job, Defendant allegedly began to discriminate against Plaintiff due to Plaintiff's African American race. Plaintiff claims that management would search Plaintiff, along with a fellow African-American co-worker, before they were allowed to leave the premises after their respective shifts ended. (*Id.*)

On February 18, 2016, Defendant terminated Plaintiff's employment. (*Id.*). On February 22, 2016, Plaintiff filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC"). (Doc. 33-1, PageID# 217). In November 2016, the EEOC transmitted a "right-to-sue" letter to Plaintiff. (Doc. 33-3, PageID# 229). Plaintiff initially proceeded pro se, bringing this lawsuit in the Southern District of Ohio. (Doc. 1-1). Following transfer to this Court, Plaintiff filed a complaint to which Defendant answered without asserting arbitration as an affirmative defense. (Doc. 7; Doc. 11). After retaining counsel, the parties agreed that Plaintiff would file an amended complaint to clarify her specific claims. (Doc. 28). The parties then engaged in limited discovery, exchanging initial disclosures in May 2017. (Doc. 23; Doc. 24). Plaintiff filed an amended complaint on June 12, 2017, to which Defendant timely filed its answer asserting an arbitration defense on August 11, 2017. (Doc. 28; Doc 30). This motion to dismiss followed in September 2017. (Doc. 32).

## III. LEGAL STANDARD

The Federal Arbitration Act ("FAA") instructs that arbitration clauses in commercial contracts "'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Javitch v. First. Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003) (quoting 9 U.S.C. § 2). Federal courts must compel arbitration if a valid arbitration agreement governs a claim. 9 U.S.C. §§ 3-4. This statutory scheme evidences "a liberal federal policy favoring arbitration agreements" to such a degree that any doubts regarding arbitrability should be resolved in favor of arbitration. *Watson Wyatt & Co. v. SBC Holdings, Inc.*, 513 F.3d 646, 649 (6th Cir. 2008) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)).

The burden rests on the party opposing arbitration to show that the agreement is unenforceable. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91-92 (2000). The opposing party "must show a genuine issue of material fact as to the validity of the agreement to arbitrate." *Mazera v. Varsity Ford Mgmt. Servs., LLC.*, 565 F.3d 997, 1001 (6th Cir. 2009) (citation and quotation omitted); *see also* 9 U.S.C. § 4. In this way, the required showing parallels that required to withstand summary judgment in a civil suit, and the Court draws all facts and inferences in the non-moving party's favor. *Great Earth Cos., Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002).

The opposing party also cannot adduce "conclusory or unsupported allegations, rooted in speculation," to satisfy this burden. *Bryant v. Commw. of Ky.*, 490 F.2d 1273, 1275 (6th Cir. 1974). Rather, it must produce "concrete evidence from which a reasonable juror" could determine that

the matter should not be compelled to arbitration. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

## IV.    ANALYSIS

Supreme Court precedent recognizes that the FAA covers employment contracts in most contexts**.**  *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001) (holding that only employment contracts of transportation workers were exempted under the FAA).  Under the FAA, the Court must make four threshold determinations before compelling arbitration: (1) "'whether the parties agreed to arbitrate'"; (2) "'the scope of that agreement'"; (3) if federal statutory claims are asserted, . . . whether Congress intended those claims to be nonarbitrable'"; and (4) "'whether to stay the remainder of the proceedings pending arbitration.'"  *Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 451 (6th Cir. 2005) (quoting *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000)).

Defendant has moved to compel arbitration of Plaintiff's claims under the Guide.  (Doc. 32-3).  Plaintiff opposes this motion under *Stout's* first step.  (Doc. 33, PageID# 177).  Here, she argues that a contractual agreement to arbitrate employment-related disputes never arose between the parties, and if it did, the agreement was unconscionable and Defendant waived reliance on it. (*Id.* at 177-79).

### A.    The Parties Agreed to Arbitrate

To determine whether the parties agreed to arbitrate this dispute, the Court must determine if the parties executed a valid arbitration agreement.  *Floss v. Ryan's Family Steak House, Inc.*, 211 F.3d 306, 311 (6th Cir. 2000.  Since arbitration agreements are fundamentally contracts, federal courts apply state law principles governing contract formation.  *Hergenreder v. Bickford Senior Living Grp., LLC.*, 656 F.3d 411, 416 (6th Cir. 2011) (internal citation and quotation omitted).

6

Courts also rely on state law to determine whether contract defenses may invalidate arbitration agreements. *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). Even in applying state law in these circumstances, the strong federal policy favoring arbitration remains present. *Inland Bulk Transfer Co. v. Cummins Engine Co.*, 332 F.3d 1007, 1014 (6th Cir. 2003).

### i.    Valid Offer and Acceptance

For an agreement to constitute a valid contract under Kentucky law, "there must be an offer and acceptance, full and complete terms, and a mutual bargained-for exchange of valuable consideration." *Sara v. Saint Joseph Healthcare Sys., Inc.*, 480 S.W.3d 286, 290 (Ky. Ct. App. 2015) (citing *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 94 S.W.3d 381, 384 (Ky. Ct. App. 2002)). Here, the parties dispute whether the arbitration agreement amounted to a valid contract, diverging over whether there was an offer and acceptance and a mutual bargained-for exchange of valuable consideration. The Court addresses each disputed aspect of contract formation in turn.

Plaintiff maintains that the presentation of a policy guide in place of a formalized arbitration agreement could not amount to a manifestation of offer and acceptance and fails to create contractual obligations. Both Kentucky state and federal case law instruct otherwise. Although Kentucky courts have not specifically addressed the requirements for creating an implied employment contract, they have determined that where an employee handbook or policy provides a clear statement of the parties' intention to enter into a contract and be bound by it, such documents become contractual in nature. *See Nork v. Fetter Printing Co.*, 738 S.W.2d 824, 826-27 (Ky. Ct. App. 1987) (denying the enforceability of an employment manual as a binding contract where no language expressing the parties' intention to be bound was present). Although *Nork* specifically addressed the contractual nature of employment manuals in the discharge context, the Sixth Circuit has interpreted this holding to apply to employment manuals generally. *Hatcher v.*

*Gen. Elec.*, 208 F.3d 213, 13 (6th Cir. 2000). That is, policies stated in an employment manual do not amount to a binding contract unless the parties have objectively manifested a clear intent to be bound. *Id.*

In this case, Defendant presented Plaintiff with the Guide outlining Defendant's dispute resolution policies and procedures indicating a willingness to enter into an agreement. (Doc. 32-3); *see* RESTATEMENT (SECOND) OF CONTRACTS § 24 (1981) (an offer requires "the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it). The Guide explicitly states that "if the dispute is not resolved through conciliation, it *must* be submitted to final and binding arbitration." (*Id.* at 159) (emphasis added). It further clarifies that "***[t]his means that neither you nor the Company may file a lawsuit against the other in a court of law.***" *Id.* (emphasis original). This provision clearly manifests an intention to bind both parties to its terms and is distinguishable from the manual policy language in *Hatcher* directly disclaiming any intention to function as an enforceable contract. *Hatcher*, 203 F.3d at 13. Aside from alleging that the Guide functioned as a policy manual, Plaintiff does not adduce sufficient evidence to refute the above language that would indicate that Defendant was not offering terms of an arbitration agreement that would make the document "in issue." 9 U.S.C. § 4. In the end, a contractual offer was present in this situation.

What is more, Plaintiff confirmed her desire to be bound by electronically accepting the terms of Defendant's proposed dispute resolution process and committing herself to arbitrate any disputes should Defendant's conciliation process fail. In Kentucky, acceptance is a "manifestation of assent to the terms thereof made by the offeree in a manner invited or required by the offer." *U.S. v. Hardy*, 916 F.Supp. 1373, 1381 (W.D. Ky. 1995); RESTATEMENT (SECOND) OF CONTRACTS § 50 (1981).

Both Kentucky state and federal courts have consistently enforced the signing of pre-dispute acknowledgement forms as evidence of acceptance of a binding contract. In *Gatliff v. Firestone Indus. Prods. Co.*, No. 2013-CA-001568-MR, 2015 WL 510680, at *1-2 (Ky. Ct. App. Feb. 6, 2015), *review denied* (Ky. Dec. 10, 2015), the plaintiff received and was required to sign multiple acknowledgment forms demonstrating acceptance of the defendant's dispute resolution plan. The Kentucky Court of Appeals interpreted the forms as binding because the forms' language "specifically refer[red] to the plan as directing all legal disputes to mediation and arbitration . . . ." *Id.* at *3.

In applying Kentucky law, federal courts have also routinely upheld electronically signed acknowledgment forms, and even the receipt of such documents, as an acceptance of binding arbitration provisions. *See Aldrich v. Univ. of Phx., Inc.*, 3:15-cv-00578-JHM, 2016 WL 915287, at *5 (W.D. Ky. Mar. 4, 2016), *aff'd*, 661 Fed.Appx. 384 (6th Cir. 2016) (treating an acknowledgment form contained within an employee handbook evidencing receipt, reading, and understanding of an arbitration policy as binding); *Polly v. Affiliated Computer Servs., Inc.*, No. CIV.A. 10-135-ART, 2011 WL 93715, at *1-3 (E.D. Ky. Jan. 11, 2011) (recognizing an electronically-signed acknowledgment form as a binding arbitration agreement that demonstrated the receipt and prospective review of an employee guidebook); *Johnson v. Career Sys. Devs.*, No. CIV. A. 4:09CV-76-M, 2010 WL 292667, at *2 (W.D. Ky. Jan. 20, 2010) (holding that an acknowledgment form as binding where the form simply recognized the receipt of a comprehensive arbitration policy); *see also*, *Mazera* 565 F.3d at 1000 (6th Cir. 2009) (recognizing a valid arbitration agreement contained in a document stating "I acknowledge receipt of the Mandatory Complaint Procedure and understand that compliance with this Procedure is a term and condition of employment").

Here, Plaintiff electronically signed an acknowledgment form that she had completed the CBU module covering Defendant's arbitration policy.  (Doc. 32-4, PageID# 167-68).  In accord with *Gatliff*, the electronic signature page directly refers back to the broader arbitration policies presented in the Guide confirming that "the Employee has read, understands and will comply with the Company's ADR policy."  (*Id.* at 167).  As outlined above, Plaintiff's electronic signature and the form's reference to a broader arbitration policy is sufficient to create an acceptance of a binding agreement.  Plaintiff has not advanced evidence to demonstrate that this is not the case.  Accordingly, Plaintiff's electronic signature binds her to the arbitration provision presented in the Guide.

### ii.    The Arbitration Agreement is supported by consideration

Plaintiff also avers that no contractual agreement to arbitrate employment-related disputes arose in the current matter because insufficient consideration existed to support Defendant's promise to arbitrate.  (Doc. 33, PageID# 178).  This argument is unavailing.  Defendant has made multiple promises in exchange for Plaintiff's pledge to engage in arbitration that would constitute sufficient consideration here.  Kentucky courts have defined consideration as either "a benefit to the party promising or a loss or detriment to the party to whom the promise is made" or more broadly as "the reason which moves contracting parties to enter into [an] undertaking."  *Luigart v. Fed. Parquetry Mfg. Co.*, 238 S.W. 758, 761 (Ky. 1922); *Cassinelli v. Stacy*, 38 S.W.2d 980, 984 (Ky. 1931).  It is widely recognized that employee promises in exchange for continued employment are promises supported by adequate consideration.  *See Higdon Food Serv., Inc. v. Walker*, 641 S.W.2d 750 (Ky. 1982) (holding that an employer's continued employment of an employee amounted to consideration for the employee's agreement to new employment terms);

*see also Circuit City*, 532 U.S. at 109 (recognizing that agreements to arbitrate as a condition of employment constitute adequate consideration and are enforceable under the FAA).

In the current case, the Guide presented Plaintiff with a promise of continued employment in exchange for Plaintiff's promise to abide by Defendant's arbitration policy. Its "Frequently Asked Question" section directly states that "[b]y accepting and/or continuing employment with Cracker Barrel, [Plaintiff] agree[s] to the terms of the Dispute Resolution Agreement, which includes . . . arbitration, where your claim is eligible for ADR." (Doc. 32-3, PageID# 165). This pledge of continued employment was a sufficient promise to act as adequate consideration in the formation of a binding arbitration agreement.

Moreover, the Guide also contains mutual promises to arbitrate employment disputes when it stated that "***[t]his means that neither you nor the Company may file a lawsuit against the other in a court of law.***" (Doc. 32-3, at 159) (emphasis original). In other words, both parties surrendered their rights to litigate such disputes in court. Kentucky law and federal courts recognize that "the forbearance of a right to sue is valid consideration to support a promise." *Alvey v. Union Inv., Inc.*, 697 S.W.2d 145, 148 (Ky. Ct. App. 1985); *see also Kruse v. AFLAC Int'l, Inc.*, 458 F.Supp.2d 375, 385 (E.D. Ky. 2006) (citing *Walker v. Ryan's Family Steak Houses, Inc.*, 400 F.3d 370, 380 (6th Cir. 2005)) ("an arbitration clause requiring both parties to submit equally to arbitration constitutes adequate consideration"). Defendant's pledge to suspend its right to litigate any employment-related disputes through the courts is adequate consideration for the formation of a binding arbitration agreement.

### iii. The Arbitration Agreement is not unconscionable

In addition**,** Plaintiff argues that the arbitration agreement is both procedurally and substantively unconscionable. Under Kentucky law, an unconscionable contract is "one which no man in his senses, not under delusion, would make, on the one hand, and which no fair and honest man would accept, on the other." *Conseco Fin. Serv. Corp. v. Wilder*, 47 S.W.3d 335, 341 (Ky. Ct. App. 2001) (quoting BLACK'S LAW DICTIONARY, 1694 (4th ed. 1976)). Review of arbitration provisions for unconscionability involves a two-step process – "first, a review focused on the procedures surrounding the making of the arbitration clause (procedural unconscionability) and second, a review of the substantive content of the arbitration clause (substantive unconscionability)." *Schnuerle v. Insight Commc'n Co.,* 376 S.W.3d 561, 575-76 (Ky. 2012) (citation omitted). The Court addresses both procedural and substantive unconscionability in turn.

Procedural unconscionability "pertains to the process by which an agreement is reached and the form of an agreement, including the use therein of fine print and convoluted or unclear language . . . . [It] involves, for example, 'material, risk-shifting' contractual terms which are typically expected by the party who is being asked to assent to them and often appear [ ] in the boilerplate of a printed form." *Conseco*, 47 S.W.3d at 343 n. 22 (citation omitted). Relevant considerations when conducting a procedural unconscionability inquiry include the parties' bargaining power, the conspicuousness and comprehensibility of the contract language, the oppressiveness of the terms, and the presence or absence of meaningful choice. *Schnuerle*, 376 S.W.3d at 576 (citations and quotation omitted).

Plaintiff argues that Defendant wielded oppressive and unequal bargaining power in its presentation of the agreement. (Doc. 33, PageID# 179). In this regard, Plaintiff juxtaposes her status as a young waitress in need of continued employment with Defendant's status as a national

company who inserted this arbitration agreement into Plaintiff's on-going employment training after being employed for approximately seven months.  (*Id.*)  However, although a relevant consideration, uneven bargaining power between the parties remains insufficient by itself to establish unconscionability.  *See Schnuerle*, 376 S.W.3d at 575 (recognizing that unconscionability is not directed "against the consequences *per se* of uneven bargaining power or even a simple old fashioned bad bargain").  Instead, Plaintiff must demonstrate that the arbitration agreement was sufficiently "one-sided, oppressive, and unfairly surprising" that no sound-minded individual would accept Defendant's offer.  *Id.*  Plaintiff has not advanced evidence to satisfy this burden.

Likewise, Plaintiff avers that Defendant surreptitiously included the arbitration agreement under the guise of on-going training, going so far as to hide the agreement's terms in the sign-off page.  (Doc. 33 at 179).  In *Conseco*, the Kentucky Court of Appeals concluded that an arbitration provision located in an agreement was procedurally sound because "[t]he clause was not concealed or disguised within the form; its provisions are clearly stated such that purchasers of ordinary experience and education are likely to be able to understand it . . . ." 47 S.W.3d at 343.

A review of the Guide and its related sign-off page demonstrates the clarity with which Defendant presented its terms to Plaintiff.  At the outset, the document appears as a separate unit and is clearly identified as "Alternative Dispute Resolution Policy Guide," leaving no ambiguity concerning its subject matter.  (Doc. 32-3, PageID# 158).  The Guide outlines a step-by-step analysis as to Defendant's conciliation and arbitration procedures, highlighting important phrases throughout, and includes a "Frequently Asked Question" section that specifically addresses non-compliance with Defendant's dispute resolution policies.  (*Id.* at 159-65).  What is more, the electronic sign-off page explicitly states that the Guide's purpose is to ensure that the "[e]mployee has read, understands, and will comply with the company's ADR policy."  (Doc. 32-4, PageID#

167).  In sum, the document's presentation, provisions, and expectations were made clear to Plaintiff and no evidence has been produced that would otherwise indicate that unfair surprise occurred in this instance.  The arbitration agreement is not procedurally unconscionable.

Substantive unconscionability "refers to contractual terms that are unreasonably or grossly favorable to one side and to which the disfavored party does not assent."  *Energy Home, Div. of So. Energy Homes, Inc. v. Peay*, 406 S.W.3d 828, 835 (Ky. 2013).  To ascertain whether an agreement is substantively unconscionable, courts "consider the commercial reasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and similar public policy concerns."  *Schnuerle*, 376 S.W.3d at 577 (citation and quotation omitted).

Plaintiff fails to advance a specific rationale as to why the arbitration agreement is substantively unconscionable.  (Doc. 33, PageID# 179-80).  It is clear, however, that the arbitration agreement in question is nothing more than a standard dispute resolution contract.  Indeed, the document allows both parties to skip the conciliation process and proceed to arbitration directly if mutually agreeable, identifies that the American Arbitration Association's Employment Dispute Resolution Rules will govern the dispute's resolution, establishes discovery procedures, and outlines expenses and fees for both parties.  (Doc. 32-3, PageID# 161-65).  Plaintiff has produced no specific evidence that the arbitration agreement's provisions were so grossly favorable to Defendant in this instance.  *See Schnuerle*, 376 S.W.3d at 577 (holding that a basic arbitration provision permitting either side to compel arbitration and lacking any distinguishing characteristic from other standard arbitration clauses was not substantively unconscionable).  Accordingly, the Court has no grounds to find the arbitration agreement substantively unconscionable in this matter.

### iv.    The Arbitration Agreement was not waived

Plaintiff also presents an alternative argument that Defendant waived reliance on the parties' arbitration agreement by continuing to litigate this action. The Sixth Circuit has explained that "a party may waive an agreement to arbitrate by engaging in two courses of conduct: (1) taking actions that are completely inconsistent with any reliance on an arbitration agreement; and (2) delaying its assertion to such an extent that the opposing party incurs actual prejudice." *Hurley v. Deutsche Bank Trust Co. Ams.*, 610 F.3d 334, 338 (6th Cir. 2006). Generally, "waiver of the right to arbitration is not to be lightly inferred." *O.J. Distrib., Inc. v. Hornell Brewing Co.*, 340 F.3d 345, 355-56 (6th Cir. 2003) (quoting *Cotton v. Slone*, 4 F.3d 176, 179 (2nd Cir. 1993)).

No bright line rule exists as to what actions amount to waiver of the right to arbitrate. *Francis v. Nami Res. Co.*, No. 04-510, 2007 WL 3046061, *5 (E.D. Ky. 2007) (citing *S. Sys., Inc. v. Torrid Oven Ltd.*, 105 F.Supp.2d 848, 854 (W.D. Tenn. 2000)). Instead, courts examine a multitude of factors to determine waiver. *Id.* They are: (1) whether the party's actions are inconsistent with the right to arbitrate; (2) the degree of pretrial litigation; (3) the length of delay in invoking an arbitration right and seeking a stay; (4) the proximity to the trial date; (5) whether a defendant seeking arbitration filed a counterclaim without asking for a stay; and (5) the resulting prejudice to the opposing party. *Id.* No one factor controls the analysis. *S. Sys.*, 105 F.Supp.2d at 854.

Here, Plaintiff argues that Defendant's failure to plead arbitration as an affirmative defense, engaging in a Fed. R. Civ. P. 26 conference, exchanging initial disclosures, and serving discovery evinces waiver of Defendant's right to arbitrate this dispute. (Doc. 33 at 176). Plaintiff attempts to draw parallels between the above course of conduct and that outlined in *Johnson Assoc. Corp. v. HL Operating Corp.*, 680 F.3d 713 (6th Cir. 2012). There, the Sixth Circuit held that the

movant's actions were inconsistent with the right to arbitrate where the movant had filed an answer and counterclaim, engaged in heavy discovery, modified the scheduling order, participated in judicial settlement discussions, and attempted to invoke its right to arbitrate three days before the discovery deadline. *Id.* at 715-16. When viewed in their totality, these actions constituted conduct inconsistent with the right to arbitrate. *Id.* at 719.

The Sixth Circuit has also identified waiver in other cases where substantial discovery occurred. *See Hurley*, 610 F.3d at 339 (recognizing waiver where defendant moved to compel arbitration after motions to dismiss, multiple summary judgment motions, and a change of venue were filed – with comprehensive discovery occurring simultaneously); *Manasher v. NECC Telecomm.*, 310 Fed.Appx. 804, 805-6 (6th Cir. 2009) (holding that waiver occurred in an action involving an answer, some discovery, negotiations, a motion to certify a class, and a summary judgment motion over a one-year period); *Am. Locomotive Co. v. Gyro Process Co.*, 185 F.2d 316, 318-19 (6th Cir. 1950) (waiver present where defendants had filed a counterclaim, engaged in extensive discovery, filed motions to dismiss and consolidate, and set a trial date).

Applying *Johnson Associates'* holistic approach, Defendant's actions in this matter do not present the same level of discovery progression and case development to warrant a finding of waiver. Here, minimal discovery has been conducted with only initial disclosures being exchanged between the parties and no depositions having occurred. (Doc. 23; Doc. 24; Doc. 31). Aside from Defendant's motion to dismiss, this case has involved scant motion practice and the matter has not been set for trial. (Doc. 32; Doc. 33; Doc. 36). All in all, Defendant's conduct does not rise to the same level of comprehensive actions taken by parties in *Johnson Associates* and its predecessors where waiver was evident.

Likewise, in cases where, as here, discovery has been limited, a party can also waive its right to assert arbitration where they appear to "sit" on this right through intentional action. In *O.J. Distributing*, waiver was present where a defendant undertook negotiations with the plaintiff before asserting its right to arbitrate despite continuously denying the existence of an arbitration agreement although plaintiff had provided defendant with that document fifteen months earlier. 340 F.3d at 358. Moreover, *Gen. Star. Nat'l Ins. Co. v. Administratia Asigurarilor*, 289 F.3d 434, 438 (6th Cir. 2002), held that a defendant waived the right to arbitrate by failing to assert it until a default judgment was entered against it. In this instance, the defendant waited almost a year after the default judgment entry before moving to vacate and offered no explanation for its delay evidencing a bad faith showing. *Id.*

No intentional delay is evident in this case. Although Plaintiff maintains that Defendant delayed this matter by failing to assert an arbitration defense in its initial answer, this argument is unavailing as this case's procedural history demonstrates. This matter was improperly filed in the Southern District of Ohio on February 10, 2017 and transferred to this Court on February 17, 2017. (Doc. 1; Doc. 2). Defendant timely filed its answer on March 16, 2017, not raising its arbitration defense. (Doc. 11). Sometime before April 8, 2017, Plaintiff retained counsel who communicated to Defendant that Plaintiff intended to file an amended complaint to clarify facts supporting her allegations. (Doc. 25, PageID# 99). The parties then engaged in limited discovery exchanging initial disclosures in May 2017. (Doc. 23; Doc. 24). Plaintiff filed an amended complaint on June 12, 2017 to which Defendant timely filed its answer asserting an arbitration defense on August 11, 2017. (Doc. 28; Doc 30).

The amended complaint is the controlling document when gauging delay in this instance. Under FED. R. CIV. P. 15(a), a pleading that has been amended under this Rule supersedes the

pleading it modifies and remains in effect. *B & H Medical, L.L.C. v. ABP Admin, Inc.*, 526 F.3d 257, n. 8 (6th Cir. 2008); *see* 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, FEDERAL PRACTICE AND PROCEDURE § 1476 (3d ed. 2017)). Once an amended pleading is filed, the original pleading no longer performs any function in the case and subsequent motions made by the opposing party are directed at the amended pleading. *Id.* Here, the original complaint and Defendant's answer are nullities as Plaintiff's amended complaint became the controlling document. *See id.* (citing *Drake v. City of Detroit*, No. 06-1817, 266 Fed. Appx. 444, 448 (6th Cir. 2008) ("complaint is a nullity, because an amended complaint super[s]edes all prior complaints"). Once Plaintiff fully developed its allegations, Defendant appropriately asserted its arbitration defense in its second answer. Plaintiff has advanced no evidence that Defendant purposefully omitted asserting its arbitration defense to extend this litigation and intentionally cause delay. In sum, since the parties have engaged in scant discovery and because Plaintiff has not presented evidence of intentional delay, Defendant's conduct was not inconsistent with its right to arbitrate.

Plaintiff also asserts that they have incurred actual prejudice because Defendant has gained a strategic advantage through discovery. (Doc. 33 at 177); *see also Johnson Associates*, 680 F.3d at 720 ("prejudice can also be found where a party has gained a strategic advantage by obtaining something in discovery that would be available in arbitration"). However, since Defendant's conduct was not inconsistent with its right to arbitrate, the Court need not reach the second component of the Sixth Circuit's test. *See Shy v. Navistar Intern. Corp.*, 781 F.3d 820, 828 (6th Cir. 2015) (emphasizing that both inconsistency and prejudice are required to demonstrate waiver).

## B. Scope of the Arbitration Agreement

Next, the Court turns to the arbitration agreement's scope. In deciding whether an issue is within the scope of an arbitration agreement courts should "ask if an action could be maintained

without reference to the contract or relationship at issue. If it could, it is likely outside the scope of the arbitration agreement." *Fazio*, 340 F.3d at 395.

Here, Plaintiff's claims clearly fall within the arbitration agreement's scope. The agreement applies to:

> any legal dispute arising out of or related to your employment, including . . . **discrimination** [and] **retaliation** . . . It also includes any claims that come about through employment laws such as **Title VII of the Civil Rights Act . . . and any federal, state or local laws or regulation covering the same or similar matters. ADR also covers any tort, negligence, or contractual claims**.
>
> (Doc. 32-3, PageID# 159-160) (emphasis added).

Plaintiff asserts claims under Title VII and the Kentucky Civil Rights Act for religious and racial discrimination and retaliation along with common law tort and punitive damages claims for grossly negligent hiring and retention. (Doc. 28 at 120-23). It is clear that all of Plaintiff's federal and state statutory and common law tort claims are covered by the arbitration agreement's unambiguous language.

### C.   Whether Any Federal Claims are Nonarbitrable

Third, the Court assesses whether any federal claims are nonarbitrable. The Supreme Court has allowed arbitration of a myriad of federal statutory rights. *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 28 (1991) (recognizing that the Sherman Act, the Securities and Exchange Act of 1934, RICO, and the Securities Act of 1933 may be subject to arbitration). Arbitration of federal statutory rights is permissible as long as "the prospective litigant effectively may vindicate [their] statutory cause of action in the arbitral forum[.]" *Id.* at 28 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 (1985)). It is well established

that Congress did not intend to exclude Title VII claims from arbitration. *See Willis v. Dean Witter Reynolds, Inc.*, 948 F.2d 305, 309-10 (6th Cir. 1991) (compelling arbitration of sexual harassment and discrimination claims under Title VII). Thus, Congress intended Title VII claims to be arbitrable. Plaintiff's Title VII claims may be referred to arbitration.

Likewise, Kentucky courts have routinely compelled employees to arbitrate state statutory civil rights claims. *See Hill v. Hilliard*, 945 S.W.2d 948, 951 (Ky. Ct. App. 1997) (mandating arbitration for sexual harassment and retaliation claims brought under K.R.S. § 344); *see also Willis*, 948 F.2d at 305 (similarly compelling arbitration of sexual harassment and retaliation claims brought under K.R.S. § 344). Kentucky courts have also recognized that common law tort claims can be arbitrable where those claims arise out of the employment relationship. *See Hill*, 945 S.W.2d at 951-952 (declining to compel arbitration on common law tort claims where such claims did not arise out of the employment relationship). In this matter, each of Plaintiff's common law tort claims arose out her employment relationship with Defendant. In the end, Plaintiff's Kentucky statutory and common law claims may also be referred to arbitration.

### D.    Stay of Proceedings

Under this analysis' final part, once it is determined that a cause of action is covered by an arbitration agreement, Section 3 of the FAA provides that the court may "stay the trial of the action until such arbitration has been had." 9 U.S.C. § 3; *see also Fazio*, 340 F.3d at 392. Accordingly, since Plaintiff's claims are fully covered by the arbitration agreement, the parties shall proceed to arbitration pursuant with the terms of the agreement and the Court shall stay this matter pending the arbitration's outcome.

**V.     CONCLUSION**

For the reasons stated herein, it is **ORDERED** as follows:

  (1) The parties are **DIRECTED** to proceed to arbitration under the terms of the arbitration agreement.

  (2) Defendant's motion to dismiss for failure to state a claim, or alternatively, stay the proceedings and compel arbitration (Doc. 32) be, and is hereby **GRANTED**.

  (3) This action is **STAYED** pending arbitration.

This 12th day of December, 2017.

Signed By:

*William O. Bertelsman*  WOB

**United States District Judge**